IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Sealed Docket Sheets Associated With Government's Request for an Order Directing Apple to Bypass the Lock Screen of an iPhone Bearing IMEI Number of 3558770062280062 | ) ) ) ) ) No. 16mc91097ADB |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY THE AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS TO UNSEAL COURT DOCKET SHEETS

The American Civil Liberties Union of Massachusetts (ACLUM) respectfully moves for this Court to unseal any currently sealed docket sheets, if they exist, associated with the government's request for an order directing Apple to bypass the lock screen of an iPhone bearing IMEI number 3558770062280062 (the Crawford iPhone). The government's request, which appears to seek authorization under the All Writs Act, 28 U.S.C. § 1651, is referenced in an affidavit by FBI Special Agent Matthew Knight in a case that has been publicly docketed with this Court. *See* Ex. A, Application and Affidavit for Seizure Warrant (Knight Affidavit), *United States v. AT&T "Flip-Style" Cellular Telephone, Bearing Serial Number 3284510815A5, Seized from Desmond Crawford on November 25, 2015*, 1:16-mj-02006 (Docket 2006) (D. Mass. Feb. 1, 2016), ECF No. 4-1. However, no formal applications, objections, or orders relating to this request appear on Docket 2006, *see* Ex. B, which raises the possibility that such filings may appear on separate, sealed docket sheets. Any such docket sheets should be unsealed because they are subject to the public's First Amendment and common law rights of access.

Public access to All Writs Act cases is vitally important to an ongoing and nationwide debate regarding whether the government can use the Act to conscript private actors to break into mobile electronic devices, such as mobile phones. *See, e.g.*, Michael D. Shear, David E. Sanger,

& Katie Benner, *In the Apple Case, a Debate Over Data Hits Home*, N.Y. Times, March 13, 2016. The issue "jumped from the tech blogs to the front pages of daily newspapers and nightly newscasts," *id.*, precisely because legal arguments long kept in the shadows were finally revealed in public filings in the Eastern District of New York and the Central District of California. *See* Application, *In re Apple, Inc.*, No. 15-mc-01902, ---- F. Supp. 3d ----, 2016 WL 783565 (E.D.N.Y. Feb. 29, 2016), ECF No. 1; Gov't's Mot. to Compel Apple to Comply, *In re Search of an Apple iPhone*, No. 16-cm-00010 (C.D. Cal. Feb. 19, 2016), ECF No. 1. Research by ACLUM and the national ACLU has now revealed more than 60 cases since 2008 in which the government has invoked the All Writs Act to seek orders requiring technology companies to unlock personal electronic devices. *See* Ex. C.[1] Almost all of these cases have public docket entries that demonstrate the existence of an All Writs Act application or order. *See* Ex. C.

In contrast, an exhaustive search by ACLUM has produced no public docket sheets reflecting any litigation or court order arising from the apparently similar government request referenced in Docket 2006. Thus, at present, the public cannot know whether a formal application was filed, opposed or granted. This situation can and should be corrected. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

Accordingly, ACLUM respectfully requests that this Court unseal any docket sheets relating to the government's apparent request for an All Writs Act order directing Apple to unlock the Crawford iPhone referenced in Docket 2006. In the alternative, if no such docket

---

[1] *See also* https://www.aclu.org/map/all-writs-act-orders-assistance-tech-companies (ACLU map of requests for All Writs Act orders).

2

sheets exist, ACLUM respectfully requests that this motion be denied as moot so that members of the public will know that they are not being kept in the dark about this crucially important matter.

## JURISDICTION

This Court has jurisdiction over this motion due to its inherent "supervisory power over its own records and files." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution." (internal quotation marks omitted)). Indeed, "it would be quite odd if the [Court] did not have jurisdiction in the first instance to adjudicate a claim of right to [its] very own records and files." *In re Motion for Release of Court Records*, 526 F. Supp. 2d 484, 487 (FISA Ct. 2007).

## BACKGROUND

**I.     The government's nationwide use of the All Writs Act.**

Originally codified as part of the Judiciary Act of 1789, *see* 1 Stat. 81–82, the All Writs Act (the Act) authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act allows courts to fill in any improper gaps in their judicial power by serving as a "residual source of authority to issue writs that are not otherwise covered by statute." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41–43 (1985).

An unlikely candidate for public attention, this esoteric provision nevertheless gained recent notoriety as the federal government's chosen vehicle for forcing technology companies to break into phones subject to search warrants. In widely-publicized cases in New York and California, the government recently sought All Writs Act orders compelling Apple to help

3

unlock iPhones. Application, *In re Apple, Inc.*, 2016 WL 783565, ECF No. 1; Gov't's Mot. to Compel Apple to Comply, *In re Search of an Apple iPhone*, No. 16-cm-00010 (C.D. Cal. Feb. 19, 2016), ECF No. 1.[2] In the California case, which involved the locked iPhone of San Bernardino shooter Syed Farook, the government sought an order requiring Apple to write new software that would undermine the security features of its device.

Apple opposed both of these requests in intense—and intensely watched—litigation. In the New York case, Magistrate Judge James Orenstein denied the government's AWA application on February 29, 2016. *In re Apple, Inc.*, 2016 WL 783565, at *1. In the San Bernardino case, Magistrate Judge Sheri Pym initially ordered Apple to write the software sought by the FBI. Ultimately the government accessed the phone without Apple's assistance—after initially arguing that such access was impossible—and Judge Pym vacated her prior order. Order Vacating February 16, 2016 Order, *In re Search of an Apple iPhone*, No. 16-cm-00010 (C.D. Cal. March 29, 2016), ECF No. 210.

But this issue is far from over. These cases sparked a national conversation about digital security and its relationship to fundamental democratic values.[3] The public continues to grapple with the potential consequences of the government's conscription of technology companies to access personal data, which reaches far beyond a single phone in a single case.[4] Indeed, the government's use of the All Writs Act to compel technology companies to unlock electronic

---

[2] *See also* Kim Zetter & Brian Barrett, *Apple to FBI: You Can't Force Us to Hack the San Bernardino iPhone*, Wired, Feb. 25, 2016; Katie Benner & Joseph Goldstein, *Apple Wins Ruling in New York iPhone Hacking Order*, N.Y. Times, Feb. 29, 2016.

[3] *See, e.g.*, Michael D. Shear, David E. Sanger, & Katie Benner, *In the Apple Case, a Debate Over Data Hits Home*, N.Y. Times, March 13, 2016; Julia Greenberg, *To Fight the FBI, Apple Ditched Secrecy for Openness*, Wired, March 25, 2016.

[4] Editorial, *Why Apple Is Right to Challenge an Order to Help the FBI*, N.Y. Times, Feb. 18, 2016; Editorial, *Apple Is Right to Battle FBI Over iPhone Security*, Boston Globe, March 4, 2016.

devices is widespread. In more than 60 cases since 2008, the government has used the Act to seek orders requiring technology companies to access personal electronic devices. Ex. C.[5] In the wake of its withdrawal of the San Bernardino request, the federal government has already made clear that it will continue to pursue this authority in future cases.[6]

## II. The government's use of the All Writs Act in Massachusetts.

Almost all of the docket sheets associated with the All Writs Acts cases referenced above are publicly available, revealing basic facts about the government's application for, any opposition to, and the judiciary's rulings on, this authority. Access to this knowledge protects the public's First Amendment right to take part in a "robust" *and* "informed" debate on the issue. *Richmond Newspapers, Inc.*, 448 U.S. at 587–88 (Brennan, J. concurring). Unfortunately, secrecy has stymied similar efforts to inform the conversation in Massachusetts.

In a February 2016 filing with the Eastern District of New York, Apple referenced a District of Massachusetts case in which the government sought to compel Apple to unlock an iPhone. *See* Ex. D, Letter in Response to Court's February 16, 2016 Order at 2, *In re Apple, Inc.*, 2016 WL 783565, ECF No. 27. Apple also indicated that it had objected to that request. *Id.* Yet Apple did not provide a docket number, and there is no publicly available docket sheet with such an application. There are grounds to suspect, however, that one or more docket sheets associated with this request have been sealed.

Docket Number 2006 relates to an investigation of Desmond Crawford. It includes an affidavit submitted on behalf of a search warrant application for two phones, in which FBI

---

[5] *See, e.g.*, Matt Drange, *Here Are 63 Other Cases Where the Government Asked for Help to Unlock a Smartphone*, Forbes, March 30, 2016.
[6] Katie Benner & Eric Lichtblau, *U.S. Says It Has Unlocked iPhone Without Apple*, N.Y Times, March 28, 2016; Antonio Planas & Chris Villani, *Massachusetts Prosecutors to Seek FBI's Help in Breaking iPhone Encryption*, Boston Herald, March 30, 2016

Special Agent Matthew Knight references a request for an order compelling Apple to unlock the Crawford iPhone. Ex. A, ¶ 30. Yet although it is often the government's practice to file a *separate* written application seeking an All Writs Act order, *see* Ex. C, Docket 2006 contains neither an actual application for, nor opposition to, such an order, nor does it include the order itself, *see* Ex. B. The absence of these documents in Docket 2006 suggests that there may be a sealed docket sheet listing these items. This possibility seems particularly likely given that a law enforcement official has reportedly confirmed that the Knight Affidavit's request concerning the Crawford iPhone "is the one referenced in the New York court record" filed by Apple.[7]

The potentially relevant docket sheet might be the *sealed* docket immediately following Docket 2006—namely 1:16-mj-02007 (Docket 2007)—or it may be some other docket. *See* Ex. E. Regardless, any sealed docket sheets associated with the request referenced in the Knight Affidavit and in Apple's New York filing would unduly prevent the public from learning the most basic details of the government's use of the All Writs Act authority in the District of Massachusetts. Alternatively, knowing that there is no sealed docket sheet would similarly inform the public's understanding of this significant issue. This information is particularly important given that Massachusetts prosecutors have reportedly stated that they hope to leverage the federal government's efforts to pursue their own attempts to access locked devices.[8]

## STANDING

"Members of the public have standing to move to unseal criminal proceedings." *United States v. Ring*, 47 F. Supp. 3d 38, 41 (D.D.C. 2014) (citing *Press-Enterprise Co. v. Superior*

---

[7] Ex. F, Dan Adams & Milton J. Valencia, *FBI Wants Apple to Unlock iPhone in Boston Gang Case*, Boston Globe, March 15, 2016.

[8] Antonio Planas & Chris Villani, *Massachusetts Prosecutors to Seek FBI's Help in Breaking iPhone Encryption*, Boston Herald, March 30, 2016.

*Court of Cal. (Press-Enterprise II)*, 478 U.S. 1 (1986)); *see also In re Wash. Post*, 807 F.2d 383, 388 n.4 (4th Cir. 1986) (newspaper had standing to move to unseal plea hearing transcripts because "it ha[d] suffered an injury that [wa]s likely to be redressed by a favorable decision" (internal quotation marks and alteration omitted)); *cf. N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294–95 (2d Cir. 2011) (civil liberties organization had standing to challenge the public's exclusion from Transit Adjudication Bureau hearings). ACLUM has standing to bring this public-access motion because it has suffered an injury in fact that is fairly traceable to any sealed docket sheet associated with the government's request for an All Writs Act order directing Apple to bypass the lock screen of the Crawford iPhone. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). This injury would likely be redressed by a favorable ruling. *See id.*

### ARGUMENT

The public's right to review docket sheets derives from two related but distinct sources: the First Amendment right of access to the materials submitted in certain criminal proceedings, and the common law right of access to judicial documents. *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). These rights are "rooted in many of the same principles," including "the need for accountability of the otherwise independent judiciary, the need of the public to have confidence in the effective administration of justice, and the need for civic debate and behavior to be informed." *United States v Sonin*, ---- F. Supp. 3d ----, No. 15-cr-116, 2016 WL 908650, at *2 (E.D. Wis. March 10, 2016); *see also Kravetz*, 706 F.3d at 52 (both rights are anchored in the court's recognition "that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system" (internal citations omitted)). Although neither right is absolute, they can be overcome by only the most compelling governmental interests. *In*

7

*re Providence Journal Co.*, 293 F.3d 1, 10–11 (1st Cir. 2002). Because there is no indication of such countervailing interests here, the secrecy that cloaks any potentially sealed docket sheets associated with the government's request for an All Writs Act order directing Apple to unlock the Crawford iPhone violates both the First Amendment and the common law.

I.  **The First Amendment requires the unsealing of any sealed docket associated with the government's request for an All Writs Act order directing Apple to bypass the Crawford iPhone's lock screen.**

This Court applies a two-part "experience and logic" test to determine whether the First Amendment right of access applies to a particular document: "First, there must be an inquiry into the historic availability of the materials; second, there must be inquiry into whether such availability 'plays a significant positive role in the functioning of the particular process in question.'" *Globe Newspaper Co. v. Fenton*, 819 F. Supp. 89, 91 (D. Mass 1993) (quoting *Press-Enterprise II*, 478 U.S. at 8–9). Where, as here, this analysis yields the conclusion that the First Amendment right of access does attach, the government can overcome the presumption of openness only by satisfying the "traditional compelling interest/least restrictive means test." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989). There is no indication that it can do so in this case.

### A. Docket sheets have been historically available.

This country has a "centuries-long history of public access to dockets." *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012).[9] "Since the first years of the Republic, state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket

---

[9] So too does English common law. An early 19th-century English law dictionary explained that judgments are "entered on the docket of that term; so that upon any occasion you may soon find out a judgment, by searching these dockets, if you know that attorney's name." Sir Thomas E. Tomlins, *The Law Dictionary* (2d ed. 1809) (quoted in *Mendoza*, 698 F.3d at 1307).

books, which were presumed open either by common law or in accordance with particular legislation." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004).[10] This legacy of docket access has particular resonance in the Commonwealth of Massachusetts, whose 17th-century legislature directed that "every Inhabitant of the Country shall have free liberty to search and view any Rolls, Records, or Registers of any Court." *Fenton*, 819 F. Supp. at 91 (quoting Bellefontaine & Newman, *The Early History of the Massachusetts Supreme Judicial Court*, 1990 Annual Report of the Supreme Judicial Court Historical Society 5–6 (1991)).

Reflecting this long-standing practice, courts have repeatedly affirmed the public's right to access docket sheets for a variety of proceedings. These include docket sheets for civil cases,[11] contempt hearings,[12] and criminal prosecutions.[13] This right of access also extends to docket sheets for search warrant proceedings. *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 575 (8th Cir. 1988) (cited with approval in *Pellegrino*, 380 F.3d at 96). This makes sense. Although "the *process* of issuing search warrants has traditionally not been conducted in an open fashion," motions to unseal seek access to "the *documents* filed in support of search warrant applications" which traditionally have been publicly available. *Gunn*, 855 F.3d at 573 (emphasis added); *see also United States v. Martin*, 684 F. Supp. 341, 343–44 (D. Mass.

---

[10] Courts often refer to the common law to establish historical precedent under the "experience" prong of the First Amendment right of access analysis. *See, e.g., Richmond Newpapers, Inc.*, 448 U.S. at 589.

[11] *Pellegrino*, 380 F.3d at 96; *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1377 (8th Cir. 1990); *Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014); *Bernstein v. Bernstein*, No. 14-cv-6867, 2016 WL 1071107, at *1 (S.D.N.Y. March 18, 2016).

[12] *United States v. Index Newspapers, LLC*, 766 F.3d 1072, 1085 (9th Cir. 2014).

[13] *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1029–30 (11th Cir. 2005); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *In re State Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam); *In re Application to Unseal 98 Cr. 1101 (ILG)*, 891 F. Supp. 2d 296, 298 (E.D.N.Y. 2012); *see also Fenton*, 819 F. Supp. at 91 (affirming public's right to access court's alphabetical indices for closed criminal case files).

1988) (affirming First Amendment right to access search warrant affidavit used in pretrial detention decisions). Similarly, the docket sheets whose entries reflect the mere existence of these documents should be—and have been—historically open. *See Gunn*, 855 F.2d at 573, 575.[14] This tradition of access to "analogous proceedings and documents" is a "reasonable prox[y] for the favorable judgment of experience concerning access" to docket sheets for All Writs Act proceedings. *In re Boston Herald, Inc.*, 321 F.3d 174, 184 (1st Cir. 2003) (internal quotation marks omitted).

### B. Public access to docket sheets plays a significant positive role in government function.

"Logic supports this judgment of history" that docket sheets have a presumption of openness. *Pellegrino*, 380 F.3d at 95. Public access to docket sheets "plays a particularly significant role in the functioning of the judicial process and the government as a whole." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982). For three reasons, this salutary effect of public access is amplified in the specific context of docket sheets associated with the government's use of the All Writs Act.

*First*, access to All Writs Act docket sheets promotes public confidence in the integrity and reliability of the judicial system. "Precisely because docket sheets provide a map" of the underlying proceedings, their "'[o]penness . . . enhances both . . . basic fairness . . . and the appearance of fairness so essential to public confidence in the system.'" *Pellegrino*, 380 F.3d at

---

[14] *But see In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) (concluding that there is "no First Amendment right of access to docket sheets of search warrant proceedings" because "docket entries are often detailed and could reveal [] sensitive information"). This decision is not persuasive. Concerns regarding any potentially sensitive information in the docket entry names are better addressed on an individualized basis with redaction or renaming rather than subverting the public's First Amendment right of access to the entire docket sheet. *Cf. In re Wilson*, 153 F. Supp. 2d 1020, 1023 (E.D. Ark. 2001).

10

95 (quoting *Press-Enterprise v. Superior Court of Cal.* (*Press-Enterprise I*), 464 U.S. 501, 508 (1984)) (alterations in original); *see also Doe*, 749 F.3d at 268. Without docket sheets—which function as a table of contents for courthouse papers—the public cannot meaningfully access judicial activity. *Fenton*, 819 F. Supp. at 94. "[T]he importance of public access to the proper functioning of our judicial system cannot be overstated." *Id.*

*Second*, access to All Writs Act docket sheets is necessary to educate the public about how the government invokes, how technology companies respond to, and how courts rule on this authority. *See Richmond Newspapers, Inc.*, 448 U.S. at 572. At the very least, docket sheets can reveal *whether* there have been court filings or rulings on this matter. *See Pellegrino*, 380 F.3d at 95–96. This basic information can "vindicate the central purpose of the First Amendment by making the operations of government institutions subject to effective public scrutiny." *Fenton*, 819 F. Supp. at 94–95. The need for such informed monitoring is at its "apex" where, as in the case of the government's attempts to utilize the All Writs Act, the underlying action implicates not just the functions of the judiciary, but the executive branch as well. *Doe*, 749 F.3d at 271. "[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Indeed, now that the government has retreated from the very public San Bernardino case, transparency in other All Writs Act cases is more important than ever. Our "criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system and, if sufficiently informed about those happenings, might wish to make changes in the system." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1070 (1991). Public access to information is the necessary prerequisite for

government accountability. As the Supreme Court noted in *Richmond Newspapers*, "[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account." 448 U.S. at 569 (quoting Jeremy Bentham, *Rationale of Judicial Evidence* 524 (1827)).

*Third*, the right of access to All Writs Act docket sheets preserves the public's opportunity to present objections to any unduly sealed documents that might be listed on those sheets. *Gunn*, 855 F.2d at 575. A sealed docket eviscerates this right, because the public cannot challenge what it cannot see. *Doe*, 749 F.3d at 268–69. In this way, sealing an entire docket "effectively short-circuit[s] any analysis of whether a First Amendment or common law right of access applies to any particular filing." *United States v. Carriles*, 654 F. Supp. 2d 557, 571 (W.D. Tex. 2009).

### C. There is no indication that sealing any docket sheets relating to the government's request for an All Writs Act order directing Apple to bypass the Crawford iPhone's lock screen is the least restrict means of serving any compelling interest.

Although the First Amendment right of access is a qualified one, judicial records that are subject to the right may be kept from the public only upon a rigorous showing. The government must demonstrate "'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Providence Journal*, 293 F.3d at 10–11 (quoting *Press-Enterprise I*, 464 U.S. at 510). It is difficult to see how the government could satisfy these stringent standards here.

Typically, the only interests in sealing docket sheets associated with search warrants or their accompanying All Writs Act orders would be the potential fear of tipping off the subject of the search warrant and the corresponding concern regarding the destruction of evidence. But both

12

Desmond Crawford and the iPhone at issue are now in the government's custody, Ex. A ¶¶ 4, 22, which presumably nullifies any risk that evidence on the Crawford iPhone will be destroyed as a consequence of disclosing docket sheets. Moreover, the government's intent to request an All Writs Act order for the Crawford iPhone is *already* public; the Knight Affidavit is not sealed and has been widely reported.[15] Accordingly, "the genie is out of the bottle" with respect to the information in which the government could even arguably have a legitimate interest in protecting. *In re Application to Unseal 98 CR. 1101 (ILG)*, 891 F. Supp. 2d 296, 299–300 (E.D.N.Y. 2012). What might remain secret, however, is basic information—including whether the All Writs Act application was formally filed, opposed, and/or granted—that could critically inform the public's understanding about the government's use of the Act in this Court.

Of course, the contents of particular entries may be sealed or redacted if there is a compelling governmental interest to do so. But sealing an entire docket sheet "is particularly troubling, because it would be an unusual case in which alternatives could not be used to preserve public access to at least a portion of the record." *Stone v. Univ. of Md. Med. Sys.*, 855 F.2d 178, 182 (4th Cir. 1988). Given the absence of any indication that there is such an interest here, this Court should grant ACLUM's motion.

## II. Unsealing is also warranted under the common law.

Although the First Amendment right of access is sufficient to require the unsealing of any sealed docket sheets relating to the government's request for an All Writs Act order directing Apple to bypass the Crawford iPhone's lock screen, the common law right of access provides an

---

[15] *See* Karen Anderson & Kevin Rothstein, *5 Investigates Uncovers Case in iPhone Encryption Battle*, WCVB, March 4, 2016; Ex. F, Dan Adams & Milton J. Valencia, *FBI Wants Apple to Unlock iPhone in Boston Gang Case*, Boston Globe, March 15, 2016.

independent and alternative basis for ACLUM's request. *Cf. United States v. Sampson*, 297 F. Supp. 2d 342, 344–46 (D. Mass. 2003) (granting access to recordings under the common law after rejecting such access under the First Amendment).

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 597. Docket sheets are unquestionably judicial documents to which the common law right of access applies. *See, e.g., Mendoza*, 698 F.3d at 1304 (noting "centuries-long history of public access to dockets"); *Pellegrino*, 380 F.3d at 94 (noting dockets have been presumed open by common law since the start of the Republic).

This right of access can be overcome by competing interests, but "the scales tilt decidedly toward transparency" and the "starting point must always be the common-law presumption in favor of public access" which is "strong and sturdy." *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011). For this reason "only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access." *Providence Journal*, 293 F.3d at 10 (quotation marks omitted).[16]

For reasons similar to those articulated above, it is unlikely that the government could satisfy this burden here. The existence of the search warrant and the desire to request an All Writs Act order are already publicly known. As a result, any sealed docket sheets associated with this request would frustrate a fundamental public interest in understanding the most basic elements of the government's use of the All Writs Act authority without any indication that the

---

[16] The Eleventh Circuit has held that "at least in the context of civil proceedings, the decision to seal the entire record of the case" imposes the even heavier burden of "compelling governmental interest" and narrow tailoring. *Perez-Guerrero v. United States Attorney Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013).

secrecy continued to serve any legitimate interest. Indeed, given the "relevant facts and circumstances of th[is] particular case," *Nixon*, 435 U.S. at 599, it is difficult to "understand how the docket entry sheet could be prejudicial" in any way to the government's interests, *In re State-Record*, 917 F.2d at 129. Accordingly, this Court should grant ACLUM's motion under the common law as well as the First Amendment.

## CONCLUSION

For the foregoing reasons, ACLUM respectfully requests that this Court unseal any docket sheets relating to the government's apparent request for an All Writs Act order directing Apple to unlock the Crawford iPhone referenced in Docket 2006. In the alternative, if no such docket sheets exist, ACLUM respectfully requests that this this motion be denied as moot

Respectfully submitted,

Jessie J. Rossman BBO #670685
Matthew R. Segal BBO #654489
ACLU Foundation of Massachusetts
211 Congress Street
Boston, MA 02110
Tel: (617) 482-3170
Fax: (617) 451-0009
jrossman@aclum.org

DATE: March 31, 2016

## Certification with Respect to Local Rule 7.1(A)(2)

Information regarding the Assistant United States Attorney responsible for the potentially sealed docket sheets is unavailable. However, I hereby certify that I conferred with the Assistant United States Attorney Emily Cummings, who is listed as lead attorney in *United States v. AT&T "Flip-Style" Cellular Telephone, Bearing Serial Number 3284510815A5 Seized from Desmond Crawford on November 25, 2015*, 1:16-mj- 02006, and Rudolph Miller, who represents Mr. Desmond Crawford.

DATE:	March 31, 2016

_____
Jessie J. Rossman

## Certificate of Service

I hereby certify that on March 31, 2016, I filed the foregoing motion and memorandum of law in support with the Clerk of the Court and served the same upon the following individuals via First Class U.S. Mail:

    Emily Cummings
    Assistant United States Attorney
    U.S. Attorney's Office – MA
    J. Joseph Moakley U.S. Courthouse
    1 Courthouse Way
    Suite 9200
    Boston, MA 02210

    Rudolph Miller
    Law Office of Rudolph F. Miller
    75 Adams Street, Suite C
    Milton, MA 02186

DATE:	March 31, 2016

_____
Jessie J. Rossman