# Exhibit A

### Affidavit of Special Agent Matthew C. Knight

I, Matthew C. Knight, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2004. For much of that time, I have been engaged in gang and drug investigations. I was previously employed as a Police Officer with the Baltimore Police Department from 1997 through 2004, and was assigned as a Detective investigating drug trafficking crimes from 2001 through 2004.

3. In the course of participating in investigations of drug trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers use cellular telephones to communicate with customers, associates, and sources of supply. I am currently assigned to the Federal Bureau of Investigation, Boston Office.

### PURPOSE OF AFFIDAVIT

4. This Affidavit is being submitted in support of an application for a search warrant authorizing the search and collection and duplication of data in:

1

a) a gray and black colored Apple iPhone cellular telephone, bearing IMEI number 355877062280062, seized from Desmond Crawford on November 25, 2015, and currently in the custody and control of the FBI ("Target Telephone 1"); and

b) a blue and black colored AT&T "flip-style" cellular telephone, bearing serial number 3284510815A5, seized from Desmond Crawford on November 25, 2015, currently in the custody and control of the FBI ("Target Telephone 2").

I. **Basis of Probable Cause**

5. The basis of my belief that probable cause exists justifying this search warrant is as follows:

**The Columbia Point Dawgs**

6. The Boston Police Department ("BPD"), Special Investigations Unit and the Federal Bureau of Investigation initiated an investigation in October 2012, concerning the criminal enterprise known as the Columbia Point Street Gang, or the Columbia Point Dawgs ("CPD"). The CPD was established in the late 1980's, and their original members resided primarily in the former Columbia Point section of Dorchester, Massachusetts. However, over the years, the gang expanded its reach and operations to various other areas throughout Boston and Massachusetts. Members and associates of the CPD were responsible for violent crimes, drug trafficking and prostitution. The investigation began after a cooperating witness identified Tony BERRY, and Demetrius and Yancey WILLIAMS as large scale distributors of drugs in the Boston Metropolitan area. Additionally, a cooperating witness working with the FBI ("CW-1")[1] reported that the BERRY and WILLIAMS brothers constituted the leadership of the current

---

[1] CW-1 began cooperating with law enforcement in November 2012, and was closed for cause in September 2013. CW-1 has admitted to being complicit in a scheme to steal official agency funds from the government in connection with a controlled gun purchase. The attempted purchase took place on July 25, 2013, and CW-1 made these admissions shortly thereafter in August 2013. CW-1 was closed as a source and ceased cooperation as a result. CW-1 was

2

CPD. Further investigation revealed that Tony BERRY's brother, Willie BERRY, was also a leader within this criminal enterprise.

7. Over the course of our investigation, we obtained heroin, cocaine, and cocaine base from several members and leaders of CPD through controlled purchases with cooperating witnesses. For example, on multiple occasions in early 2013, Demetrius WILLIAMS sold cocaine base and cocaine in controlled purchases. Similarly, in 2013 and 2014, David JONES, a CPD member, was involved several controlled purchases of cocaine base and heroin. Kareem BERRY, a CPD member and brother to Willie and Tony BERRY, was involved in several controlled purchases of heroin. In addition, during the course of our investigation, we intercepted telephone calls, per court order, in which numerous members of the CPD conspired to distribute, and distributed, heroin, cocaine, and cocaine base. Both Willie BERRY and Demetrius WILLIAMS were intercepted trafficking significant amounts of controlled substances, including heroin and cocaine. We also seized numerous loaded firearms from members/associates of the CPD. In June 2015, 48 leaders, members, and associates of the CPD were charged in five separate indictments in this District for trafficking controlled substances,

---

overheard over court-authorized wiretap communications engaged in drug conversation with D. Williams. CW-1 has a criminal history that includes arrests, but no convictions, for operating a motor vehicle negligently, leaving a scene of an accident, use of vehicle without authority, assault with a dangerous weapon, abuse prevention act, intimidation, trafficking a controlled substance, possession to distribute a class D controlled substance, trespassing and firearm identification card violation. CW-1 has arrests and convictions for conspiracy to violate the controlled substances act, possession to distribute a class B controlled substance, and assault with a dangerous weapon.

The information that CW-1 provided was corroborated by the controlled drug purchases conducted by CW-1 prior to July 2013. Additionally, CW-1's information has been corroborated by other confidential informants and the investigation generally. I consider the information provided by CW-1 to be reliable. CW-1 has received consideration in the form of financial assistance in connection with his/her cooperation in this case. I have not found that CW-1's recent interceptions discredit any of the intelligence given to investigators or the controlled buys that were conducted as most of them were both audio and video recorded.

including heroin, cocaine, cocaine base, and oxycodone, and firearm offenses. The individuals charged include Willie BERRY, Tony BERRY[2] and Demetrius WILLIAMS.[3]

8. In addition to drug trafficking, members and associates of the CPD have engaged in various acts of violence, including shootings, as a means of (1) establishing and controlling areas where the gang can distribute controlled substances by intimidating/eliminating rival gangs and/or drug trafficking organizations, and (2) intimidating potential witnesses to the gang's illegal activities, including its drug trafficking and violent crimes. Members and associates of the gang are expected to engage in violence to support the CPD and can increase their position in the CPD by committing violence on behalf of the gang. In this regard, members/associates of the CPD have assaulted and/or shot rival gang members/associates on numerous occasions since the inception of the gang in August 2014 through January 2015. The gang's reliance on violence to intimidate rivals and potential witnesses has been publicly confirmed by gang members and gang leaders in videos which have been publicly posted on the internet. I have reviewed a number of these videos. In these videos, CPD members and leaders, such as Tony BERRY, Vandell WOODS (the half-brother of Tony and Willie BERRY),[4] and Antonio CHATMAN, have openly touted the gang's use of violence (particularly shootings), have openly referenced at least one shooting allegedly committed by CPD members/associates, and have sought to intimidate potential witnesses. In

---

[2] Criminal case number 15-10146-FDS.

[3] Criminal case number 15-10145-RGS.

[4] WOODS, who was not charged in the pending indictments in this District involving the CPD, is presently serving a 5-year sentence in New York based on a shooting he committed at a New York City nightclub. WOODS shot two of the club's security officers after he was ejected from the club.

these videos, CPD members/associates expressly recognize "the Point" as an organization committed to violence and drug trafficking, and have sought to publicly intimidate rival gangs, such as the Orchard Park street gang, through these videos and threats of violence against rivals.

9. During our investigation of the CPD, we intercepted calls between CPD members/associates in which they discussed the use of violence to further the gang's goals. For example, we intercepted a call between Demetrius WILLIAMS and Aaron BLOUDSON (a CPD member) in which WILLIAMS indicated that he believed that rival Orchard Park gang members would be at a state courthouse at a certain time and sought to have BLOUDSON and others attack the rival gang members.[5] In December 2014, we intercepted several calls between Demetrius WILLIAMS and a member of the CPD-aligned Saint Joseph Street gang. During these calls, Demetrius WILLIAMS bragged about encountering and assaulting John Doe while attending the arraignment of his brother (Yancy WILLIAMS) inside the Boston Municipal Courthouse. During subsequent intercepted calls that day, Demetrius Williams, Yancey Williams, and Yancey Calhoun discussed obtaining loaded firearms so that they could further assault John Doe.[6] Finally, on December 11, 2014, we intercepted a call between Demetrius WILLIAMS and John Freeman-Clements (a CPD associate). Freeman informed Demetrius WILLIAMS that a friend of his was en route via train from Virginia (subsequently identified as Morgan Jefferson) to Boston with a loaded semi-automatic firearm for sale and asked if Demetrius WILLIAMS wanted to purchase the firearm. Demetrius WILLIAMS agreed to purchase the firearm. Demetrius WILLIAMS and John Freeman-Clement

---

[5] Based on this information, steps were taken by BPD to prevent the attack, which did not occur.

[6] Based on this information, BPD took steps to warn John Doe and his family and to prevent any such assault.

subsequently discussed having Jefferson commit violent acts against rival gang members. Investigators subsequently arrested Morgan Jefferson at South Station Train Station with a loaded semi-automatic firearm.

### The Shooting of John Doe on March 27, 2015

10. One of the rival street gangs with whom the CPD engaged in a violent feud was the Greenwood street gang. This gang operates primarily out of the area of Greenwood Street in Dorchester, Massachusetts. I am aware that beginning in 2014, members/associates of the CPD and Greenwood street gang were involved in a number of violent confrontations, including shootings. For example, in June 2014, the two gangs engaged in a number of shootings, which resulted in several people being wounded.

11. John Doe has been identified by the BPD, and in our investigation, as a leader in the Greenwood street gang during the time of the violence between the two gangs.[7] In November 2014, Vandell WOODS, and other CPD members/associates encountered John Doe at a shopping mall in downtown Boston. John Doe was physically attacked by WOODS and the other CPD members/associates and beaten in front of several bystanders. The assault and battery of John Doe was recorded on mall security cameras. During our investigation, on December 26, 2014, Demetrius WILLLIAMS was shot numerous times at 128 South Street in Jamaica Plain, Massachusetts. Following the shooting, we intercepted calls in which Demetrius WILLIAMS stated that he believed that the person who had shot WILLIAMS was John Doe. Demetrius WILLIAMS was also intercepted seeking to obtain a firearm so that he could retaliate against John Doe. Demetrius WILLIAMS was unable to do so as he was arrested shortly thereafter on a federal firearm charge.

---

[7] I know the identity of John Doe and am intentionally excluding it from this affidavit.

12.  On March 27, 2015, at approximately 2:42 p.m., BPD responded to a report of shots fired at Terrace Street and New Cedar Street in Roxbury, Massachusetts. BPD officers subsequently identified that John Doe had been shot and wounded after he checked into a local hospital for treatment for the gunshot wound. A witness at the scene of the shooting stated that he/she observed a blue pickup-style truck, operating at a high rate of speed, turn onto Terrace Street from Cedar Street and then the witness heard several gunshots. Another witness heard gunshots, and then observed a male subject hanging his upper body outside the driver's side window of a Blue Toyota Tundra pickup and shooting a black handgun as the truck was driving down Terrace Street. The BPD recovered numerous pieces of evidence from the shooting scene, including ballistic evidence. Ten .40 caliber shell casings were recovered at the shooting scene.

13.  Shortly after BPD officers broadcast the description of the suspect vehicle, a Massachusetts State Police ("MSP") trooper observed a blue Toyota Tundra, with Massachusetts plate R99120, travelling on the Riverway in the direction of Brookline Avenue/Boylston Street in Boston. The MSP trooper observed two or possibly three black males in the vehicle and attempted to stop the vehicle to conduct an inquiry. The vehicle refused to stop and fled from the MSP. The vehicle was able to avoid being stopped and was last seen in the area of Forsyth Street in Boston.

14.  At approximately 3:03 p.m., BPD received a 911 call from a witness who stated that he/she had observed a blue pickup truck travelling at a high rate of speed in the area where the MSP had been chasing the suspect vehicle. The witness informed responding officers that, as the pickup passed the witness, he/she heard a sound consistent with an item hitting concrete. The witness also observed that the driver's side window was being rolled up as the vehicle

continued. The witness stated that he/she investigated and found a pistol in the area where he/she had heard the item hit the concrete. With the aid of the witness, BPD officers recovered a black Glock Model 22, .40 caliber, semi-automatic handgun bearing serial number KMK434. The recovered shell casings from Terrace Street were subsequently matched to the recovered .40 caliber Glock pistol.

15. The blue Tundra pickup truck was located that day by BPD officers at Newcomb Street and Reed Street. A security camera in the area captured a single black male exiting the vehicle and leaving the area. The Tundra was registered to a business identified as Sittin Pretty LLC. Based on the investigation, this business is associated with Desmond CRAWFORD, a/k/a "Dez." In addition, BPD officers executed a search warrant for the Tundra and recovered documents identifying Desmond CRAWFORD, including legal and tax documents with CRAWFORD's name on them and listing him as the sole owner of Sittin Pretty LLC. CRAWFORD's mother Sandra Ray reported the vehicle stolen days later.

16. CRAWFORD has been identified by BPD as a CPD member through a variety of sources including field reports, photographs, and his own statements.

17. On April 1, 2015, five days after the shooting of John Doe, we intercepted a call between David COKE, an associate and drug source for the CPD, and CRAWFORD. In the intercepted call, COKE and CRAWFORD discussed the recent shooting of John Doe. COKE asked CRAWFORD if CRAWFORD had checked his "status" – i.e., whether CRAWFORD had checked to see if an arrest warrant had been issued for him. CRAWFORD said he had not. CRAWFORD told COKE that: "Nobody come knocking yet." COKE replied: "Okay but so you should be gravy." COKE told CRAWFORD that various people were taking credit for the shooting. CRAWFORD replied: "Yeah, they can let them have it. I don't care."

18. The conversation continued and CAWFORD told COKE, "Fuck dog, I'm trying to do something tonight." COKE replied, "I know thats, thats how I play, I'm going fucking check this thing right, I'm been just sitting here just fucking working, I just gave this kid some last night, so he said check him in the morning. So I didn't even check with him in the morning, so I'm going to call right now so I leave here." I believe, based on my training, experience and knowledge of the investigation that during this portion of the conversation, CRAWFORD told COKE that he was trying to get a drug supply. I further believe that COKE explained to CRAWFORD that he was checking on a drug supply that he was going to get from his supplier.

19. COKE then said "So I'll go fucking over there, or fucking um call you as soon get up with him. Unless he's over there by fucking Mr. Brown eating spot Flames." CRAWFORD replied, "I ain't going over there. I ain't going." COKE responded, "I I I know you ain't going over, I'm just saying me, I'm talking about me, you know me, me, I got, I got around there because they will check." I believe that during this portion of the conversation COKE then explained to CRAWFORD that he would meet the supplier near the Flames restaurant, and CRAWFORD said that he wasn't going to go to that location. COKE clarified that he (COKE) would be meeting the supplier. COKE then continued explaining that CRAWFORD should be in the clear for the John Doe shooting, and the call ended shortly thereafter.

20. On April 6, 2015, we intercepted another call between COKE and CRAWFORD. The two again discussed the shooting of John Doe. During their discussion, CRAWFORD stated that he was trying to avoid getting involved in problems and that he was angry at himself for "jumping out the window" – which, based on my training and experience, and the investigation to date, I understand as a reference to the shooting. As previously noted, a witness identified that the shooter had hung out of the driver's side window in order to

9

commit the drive-by shooting. COKE tried to reassure CRAWFORD that he would not be arrested as the police did not have enough evidence to charge CRAWFORD. In this regard, COKE stated that the police would not bring a weak case against CRAWFORD and that CRAWFORD's case would be weak as long as the victim, John Doe, did not cooperate with law enforcement against CRAWFORD. COKE further stated that John Doe would not cooperate with the police.

21. On Tuesday, November 24, 2015, Hon. Marianne B. Bowler, US Magistrate Judge issued a criminal complaint charging Desmond CRAWFORD with charging him with (1) 18 U.S.C. §1959(a)(3), and (2) using or carrying a firearm, in violation of 18 U.S.C. §924(c)(1)(A) (15-2273-MBB). Later that day members of the Special Investigations Unit and Federal Bureau of Investigation learned that on November 19, 2015, Desmond CRAWFORD rented a 2014 Toyota Corolla bearing Massachusetts Registration Number 2EPJ20, black in color from Enterprise Rental Car located at 277 Willard Street in Quincy, Massachusetts with a return date of November 25, 2015.

22. At approximately 1:45 p.m. on Wednesday, November 25, 2015 members of the Special Investigations Unit observed Desmond CRAWFORD enter the driver seat of the above described motor vehicle on North Main Street in Randolph. With the assistance of marked police units of the Randolph Police Department Desmond Crawford's motor vehicle was stopped on Old Street at the intersection of Canton Street in Randolph, MA. Desmond Crawford was removed from the motor vehicle and placed under arrest on criminal complaint 15-2273-MBB. During a search incident to his arrest Desmond CRAWFORD was found to be in possession of a large sum of US currency that was bundled with a rubber band, and Target Telephone 1 and Target Telephone 2.

23. Investigators then conducted a visual interior inspection of the 2014 Toyota Corolla, (which was parked on a public way) and observed that area around the gear shift was altered and loose. Based on my experience, knowledge and training in weapons and contraband hidden/concealed in motor vehicle I believed the area of the gear shift that had been altered and loosen may contain such. I have recovered and seized several illegal firearms, drugs and drug proceeds concealed in altered locations of motor vehicles.

24. Additionally investigators know of at least two illegal firearms that have been recovered from motor vehicles that have been in the care and control of Desmond CRAWFORD within the past eight (8) months. The most recent firearm was Sig Sauer 9mm semi-automatic loaded firearm recovered from the altered gear shift area of a motor vehicle rented from Hertz by Desmond CRAWFORD in August 2015.

25. A search warrant executed on November 27, 2015 on the vehicle being operated by CRAWFORD revealed .45 caliber Glock handgun, serial number YVT194, loaded with a magazine containing nine rounds of ammunition, from underneath the gear/cup-holder housing between the driver and passenger seats.

26. Based upon my training and experience conducting investigations of drug trafficking organizations, I know that there are common practices employed by drug traffickers in the course of their illicit business. Specifically, drug traffickers commonly keep mobile telephones to be used to contact and receive correspondence from drug sources of supply, gun sources of supply, co-conspirators and associates and drug customers. In the course of conducting their business, drug traffickers are required to conduct these communications with the aforementioned subjects on multiple occasions on a daily basis. The correspondence that drug traffickers are required to maintain on their mobile telephone results in substantial evidence

of drug trafficking activity being maintained in their telephone as it pertains to date, time and duration of illegal drug trafficking or gun trafficking related communications. Moreover, telephone numbers and corresponding identities are often stored in drug trafficker's mobile telephones to facilitate these routine communications. Lastly, I know that drug traffickers often utilize the text messaging feature of their mobile telephone to conduct drug and gun trafficking related communications with the parties described above. These messages often denote locations, dates and times of prearranged meetings between these parties, drug types, amounts, gun descriptions and prices agreed upon. These text based conversations result in records stored within the mobile phone which evidence details of the mobile phone owner's drug trafficking activities. Based upon the previously described wire interceptions conducted on Coke's phones, I also know that Crawford has used his personal communication device to discuss details related to the shooting of a rival gang member.

## CONCLUSION

27. Based on the information set forth above, I believe that probable cause exists to believe that Target Telephone 1 and Target Telephone 2 will contain evidence of violations of racketeering laws, such as 18 U.S.C. §§ 1963 and 1959 (Racketerring and Violent Crimes in Aid of Racketeering), and 21 U.S.C. §§ 841(a)(1) and 846 (Distribution of Crontrolled Substances and Conspiracy to Distribute Controlled Substances). Specifically, I believe Target Telephone 1 and Target Telephone 2 will contain:

   a) the telephone numbers of co-conspirators participating as associates and/or customers with Desmond CRAWFORD and others;

b) the names/nicknames or aliases of co-conspirators participating as associates and/or customers with Desmond CRAWFORD and others;

c) racketeering related information by text message;

d) and images used for the purpose of furthering the goals of the CPD.

28. I seek authorization for the search of the Target Telephone 1 and Target Telephone 2 for the following: subscriber information; call logs; call details with the cell site information; text messages, including iMessages (Target Telephone 1), SMS, MMS and other forms of electronic messaging with content; chat logs; photographs; internet history; digital files; data; and any other evidence related to the possession, control or use of the phone as well as the trafficking of controlled substances and in furtherance of racketeering related activities of CPD.

29. I also seek authorization for a search of all directories, sub-directories and electronic files (including metadata and attributes) including dates and times the files, directories or sub-directories that may have been created, altered, modified, deleted or accessed of Target Telephone 1 and Target Telephone 2.

30. I also seek authorization for an ORDER requiring Apple, Inc. ("Apple") to assist in the execution of the search warrant by bypassing the lock screen of the iOS device, (Target Telephone 1) and providing technical assistance consisting of, to the extent possible, extracting data from the Device, copying the data from the Device onto an external hard drive or other storage medium, and returning the aforementioned storage medium to law enforcement, and/or providing the FBI with the suspect Personal Identification Number (P.I.N) or Personal Unlock Code (P.U.K.) so that access can be gained to Target Telephone 1 for this search.

31. Due to the complexity and technical expertise required to properly execute search warrants for digital evidence, it is further requested that a forensic technician, sworn or non-

sworn, be granted authorization to examine, make duplicate images/copies of the digital content of the above mentioned digital storage device and to determine if evidence of the offenses enumerated above are contained therein. These individuals have specialized training and expertise in computer and cell phone forensics and will conduct their analysis under the control and supervision of law enforcement. Their expertise will materially assist in the execution of the warrant.

I, Matthew C. Knight, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Matthew C. Knight
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 1st day of February 2016, at Boston, Massachusetts.

HON. MARIANNE B. BOWLER
United States Magistrate Judge
District of Massachusetts